IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SARA RATCLIFF,
    Plaintiff,

v.                                                                              Civil Action No. 1:18-cv-757

RICHARD V. SPENCER
        Secretary, U.S. Navy,
        Defendant.

## MEMORANDUM OPINION

At issue in this Title VII and ADEA action is whether Plaintiff can survive summary judgment on any of her claims. She cannot do so; the undisputed factual record reflects that Plaintiff has not presented evidence to establish a *prima facie* case of gender or age discrimination, retaliation, or a hostile work environment. Accordingly, for the reasons that follow, summary judgment must be granted in Defendant's favor.[1]

### I.

Defendant substantially complied with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56 regarding summary judgment by setting forth a statement of undisputed material facts in separately numbered paragraphs. Plaintiff, for her part, also substantially complied with the rules by responding to each of Defendant's undisputed facts. In addition to

---

[1] Following the summary judgment hearing in this matter, Defendant filed a Notice indicating that there was a recent change in the Department of Justice's litigating position as clarified in a brief filed before the Supreme Court. The Department of Justice's view, as reflected in that brief, is that lateral transfers qualify as personnel actions under Title VII. In response, Plaintiff filed a motion to strike defendant's notice or, in the alternative, to grant leave to file a response to the notice. Because the change in the Department of Justice's litigating position does not alter the result reached here, Plaintiff's Motion to Strike will be denied.

1

responding to Defendant's statement of undisputed facts, Plaintiff also sets forth a number of facts that she claims are disputed. As noted *infra*, these facts are immaterial. Accordingly, the following material facts are undisputed:

Plaintiff a former senior level intelligence official, became a Chief Human Capital Officer ("CHCO") of Naval Intelligence Activity ("Naval Intelligence"),[2] in June 2010. In this capacity, Plaintiff was responsible for "developing recommending, implementing and directing programs and policies pertaining to human capital management within the Naval Intelligence Community."

In 2013, Lynn Wright ("Wright") became the Deputy Director of Naval Intelligence, responsible for managing Naval Intelligence's senior executive corps, which included Plaintiff. From November 2015 to March 2018, Andrew Richardson ("Richardson") was the Assistant Deputy Director of Naval Intelligence. In this capacity, Richardson reported to Wright, and was Plaintiff's supervisor.

Wright administered Naval Intelligence's operation of "joint duty assignments" or "JDAs" whereby an employee would be detailed to a position in another Intelligence Community element or other relevant organization for the purpose of providing an opportunity for the employee to gain a wider understanding of the missions and functions of the various components of the Intelligence Community. As such, a JDA is meant to be a career-broadening experience designed to open up new possibilities for participating employees. A JDA is, in fact, required before being considered for promotion to the senior intelligence executive corps.

In 2014, Plaintiff applied for and received a JDA assignment with the Under-Secretary of Defense for Intelligence ("USDI"). Pursuant to a memorandum of understanding ("MOU") between Naval Intelligence, USDI, and Plaintiff, the JDA would extend from July 21, 2014 to July 19, 2016. The MOU provided that, upon completion of the JDA, the Navy would "ensur[e] that

---

[2] Naval Intelligence is one the organizations responsible for executing the Navy's critical intelligence missions.

[Plaintiff was] permanently placed in [her] former position or an equivalent position, as determined by the employing element."

In 2016, Plaintiff extended her JDA until July 20, 2017. Also in 2016, Wright developed guidance for implementation of JDAs. Significantly, this guidance stated: "An employee *should not* return to the exact same job they left, even if that is the preference of the employee and the home organization."[3]

While Plaintiff was on her JDA, her CHCO position was occupied by Cynthia Snyder ("Snyder"). In December 2016, Snyder informed Wright and Richardson that she would be returning to her home office before her JDA term expired. As a result of Snyder's premature departure, the CHCO position was vacant and Wright decided to fill the position by advertising it to the general public. In conformance with her policy, Wright determined in late 2016 that Plaintiff would not be returning to her CHCO position. Thus in December 2016, Richardson met with Plaintiff and informed her that she would not be returning to her CHCO position. At that meeting, Richardson asked Plaintiff about her retirement plans and suggested that there were some employees at Naval Intelligence who had declined to retire. Plaintiff and Richardson also discussed cyber issues within the Intelligence Community and cyber positions that addressed those issues. In February 2017, Plaintiff emailed Richardson expressing her preference for her former CHCO position or, alternatively, extending her JDA.

On March 31, 2017, Naval Intelligence advertised Plaintiff's CHCO position on USAJobs. Plaintiff was surprised and sent written complaints to Wright, Richardson, and their supervisors. On April 17, 2017, Richardson and Plaintiff met again. When Plaintiff expressed her interest in

---

[3] Plaintiff disputes the legitimacy of this policy but does not dispute the existence of the policy or the timeframe in which it was created. As such, Plaintiff's claim that the policy is illegitimate is immaterial, because Plaintiff does not establish a *prima facie* case of discrimination and it is not necessary to reach or decide if Defendant's proffered non-discriminatory reason for its conduct is legitimate.

3

returning to her CHCO position, Richardson said "Sara, don't sell yourself short that the only job you can do is Human Capital." Later in the conversation, he also commented that the National Reconnaissance Office has "moms out there who . . . just want to be close to their kids, so they don't have a problem recruiting women." Plaintiff and Richardson also discussed where Plaintiff would work following her JDA. Plaintiff's email summary indicates that: (1) "I am speaking with [USDI] about a possible extension" and (2) "I will research the Navy Cyber Workforce Personnel option you presented." Richardson informed Plaintiff that hiring for the CHCO position had been paused and suggested that Plaintiff pursue a JDA with the Office of the Director of National Intelligence ("ODNI"). Plaintiff rejected this idea because it would be a demotion, but Richardson reached out to ONDI anyway. In May 2017, USDI, Naval Intelligence, and Plaintiff agreed to a short three-month extension of Plaintiff's JDA through October 27, 2017, rather than Plaintiff's proposed 18-month extension.

On May 18, 2017, Plaintiff filed with the Navy's Equal Employment Opportunity, Diversity & Inclusion Office an informal complaint against Wright and Richardson alleging discrimination. On May 23, 2017, Plaintiff and Richardson met again and discussed the Navy cyber position that was to be created for Plaintiff to fill. Plaintiff was apprehensive that such a position would not be equivalent to her CHCO position. On May 23, 2017, Plaintiff sent an email to Richardson reiterating her concerns and indicating that the Navy had opposed her requested 18-month JDA extension. On May 31, 2017, Richardson replied indicating that Plaintiff's statement was "categorically false," that Naval Intelligence was "willing to approve any further extension of your JDA," and that her characterizations were "misleading and incomplete."

The record makes clear that the proposed Navy cyber workforce position was intended to be a position with the same pay, grade, and benefits that Plaintiff enjoyed as CHCO. During the summer of 2017, Richardson worked with others to develop this cyber position. The position description underwent heavy revisions. On August 11, 2017, Plaintiff provided Richardson with

4

her concerns and doubts about the cyber position. Richardson did not immediately respond.

On September 18, 2017, before her JDA at USDI expired and before the design of Plaintiff's proposed cyber position at Naval Intelligence had been finalized, Plaintiff resigned from Naval Intelligence and accepted a position as Executive Director of the Federal Chief Human Capital Officers Council with the Office of Personnel Management ("OPM").[4] In October 2017, Plaintiff filed a formal equal employment opportunity complaint with the Navy's Equal Employment Opportunity, Diversity & Inclusion Office. In late 2017, Zev Goldrich, a male younger than Plaintiff, was selected to be the CHCO. A cyber position, similar to what Richardson had proposed and offered to Plaintiff, was advertised in February 2018. Plaintiff was 61 years old at the time that she filed her complaint in this case.

## II.

The standard for summary judgment is too well-settled to require extensive elaboration here. Simply put, summary judgment is appropriate when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment, facts must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colletion Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

---

[4] Although the parties did not state what position Plaintiff obtained with OPM, the information is available on the Chief Human Capital Officers Council website. *See* Sara Ratcliff, CHCOC, https://chcoc.gov/content/sara-ratcliff (last visited June 4, 2019). As the Fourth Circuit has consistently held, "[t]his court and numerous others routinely take judicial notice of information contained on state and federal government websites." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

A.

Plaintiff claims that she was treated differently from other employees because of her gender and age, in violation of Title VII and the ADEA. To avoid summary judgment on her Title VII and ADEA disparate treatment claims Plaintiff must produce either direct evidence of gender and age discrimination or rely instead on the *McDonnell-Douglas*[5] burden shifting framework. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*)). Here, Plaintiff has not produced direct evidence of discriminatory animus based on gender or age nor does she claim that she has such evidence. Accordingly, it is only necessary to address whether plaintiff has established a *prima facie* case under *McDonnell-Douglas'* burden-shifting framework.

1.

To state a *prima facie* case for disparate treatment based on gender under Title VII, plaintiff must produce record evidence demonstrating: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). The parties do not dispute that the first two elements of Plaintiff's Title VII *prima facie* case are easily met; Plaintiff was a member of a protected class (female) with satisfactory job performance. The undisputed factual record reflects, however, that Plaintiff cannot show that she suffered an adverse employment action because she resigned from Naval Intelligence to accept a position with OPM before the design of

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing a framework for discrimination cases whereby: (1) the plaintiff establishes a *prima facie* case, then (2) the defendant must offer a legitimate, nondiscriminatory reason for the action taken, and then (3) the plaintiff must show that the offered explanation is pretextual).

the Naval Intelligence cyber position was completed. Moreover, the record contains no facts demonstrating that Plaintiff's environment was so objectively intolerable that she was constructively discharged. Likewise, the undisputed facts show that Plaintiff cannot establish that she was treated differently from similarly situated employees. Rather, the comparators that Plaintiff identifies show the contrary: that other employees who participated in the JDA program were not returned to their original position. Accordingly, Plaintiff cannot establish her *prima facie* case for gender discrimination and summary judgment must be granted.

Plaintiff claims two adverse employment actions: (1) not being returned to the same or equivalent position in violation of her MOU;[6] and (2) constructive discharge. The record supports neither of these claims.

To begin with, the record does not reflect any violation of the MOU. The MOU provides: "Reintegrate employees returning from a JDA, ensuring that the employee is permanently placed in the employee's former position or an equivalent position, as determined by the employing element." Plaintiff's contention fails because the MOU makes clear that Plaintiff was not entitled to her former position or an equivalent position until her JDA expired in October 2017 and she reintegrated at Naval Intelligence. As the undisputed factual record reflects, before Plaintiff ever returned to Naval Intelligence or was forced to take the cyber position that was still being designed, she resigned. As the Fourth Circuit has made clear, there can be no adverse employment action except through constructive discharge where, as here, the employee resigns. *See Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) ("[W]hen an employee voluntarily quits

---

[6] Defendant asserts in his reply brief that a violation of the MOU could not constitute an adverse employment action because contractual claims must be brought under the Tucker Act, 28 U.S.C. § 1491(a)(1). Defendant misunderstands Plaintiff's argument, which asserts that Defendant violated the MOU based on a discriminatory animus that altered the terms and conditions of her employment. This falls squarely within the realm of Title VII and the ADEA. *See Hishon v. King & Spaulding*, 467 U.S. 69, 74-75 (1984).

7

under circumstances insufficient to amount to a constructive discharge there is no adverse employment action"). Thus, because Plaintiff resigned before she returned to Naval Intelligence, the provisions of the MOU regarding reintegration were not triggered and there was no MOU violation.

Plaintiff attempts to create a triable issue of fact by pointing to factual disputes concerning the cyber position. Specifically, Plaintiff disputes: (1) whether Richardson proposed a specific cyber position; (2) whether Plaintiff participated in the development of the cyber position; and (3) whether the cyber position was an equivalent position. None of these disputes is material. The specific facts regarding the back-and-forth between Plaintiff and Richardson on the development of the cyber position provide context, but are irrelevant to whether an adverse employment action occurred, because Plaintiff resigned before any action was taken. It follows that it is impossible to say whether the cyber position, if it had been finally defined, would have been equivalent to Plaintiff's previous position as a CHCO.

The Fourth Circuit has addressed a similar question in *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004). In *James*, the employee was reassigned to a new position and, thereafter, resigned. *See id.* at 377. The Fourth Circuit held that the plaintiff could not establish an adverse employment action, because he could only speculate about the effects of his reassignment, given his resignation. *See id.* ("Speculation about the future adverse consequences of a reassignment may not rise to the level of a genuine dispute."). Specifically, the Fourth Circuit noted that, with plaintiff's departure, "we are left to guesswork and conjecture as to what his prospects would have been." *Id.* Here, Plaintiff similarly speculates on the impact of reassignment if she had not resigned, but she cannot cobble together an adverse employment action based on what might have been. Plaintiff was not entitled to her former CHCO position or an equivalent position under the MOU until she returned to Naval Intelligence. Plaintiff never returned to Naval Intelligence and never triggered the terms of the MOU. On this summary judgment record, it is

8

clear that Plaintiff resigned before the cyber position was finally defined and, therefore, the disparity between the cyber position she would fill and her CHCO position remains speculative.[7]

The speculative nature of determining whether an adverse employment action exists when an employee resigns is why the theory of constructive discharge developed in Title VII jurisprudence. Constructive discharge occurs "when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984) (quoting *J.P. Stevens & Co. v. NLRB*, 461 F.2d 490, 494 (4th Cir.1972)). Thus, "[a] plaintiff alleging constructive discharge must ... prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." *Bristow v. Daily Press Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). Plaintiff complains that her workplace was "objectively intolerable": (1) because Richardson reached out to ONDI; (2) because of Richardson's comments during the April 2017 meeting; (3) because her CHCO position was advertised on USAJobs; (4) because her second request for an 18-month JDA extension was not approved; (5) because Richardson only offered Plaintiff the option of returning to the cyber position; (6) because Richardson ignored Plaintiff's comments about the cyber position for months; (7) because Richardson prepared her job description in a way that would force her to reject

---

[7] Plaintiff cites *Connolly v. Mills Corp.*, 430 F. Supp. 2d 553 (E.D. Va. 2006) (Ellis, J.) as stating "adverse action begins when employee [sic] informed of allegedly discriminatory employment decision, regardless of when the effects of the decision come to fruition." Plaintiff's reliance on *Connelly* is misplaced. That case involved a different issue, namely, when the 300-day statute of limitations period begins to run. Although *Connolly* focuses on a statute-of-limitations question, it does shed light on when an adverse employment action occurs – when an employee receives "final and unequivocal" notice. *Id.* In *Connolly*, the plaintiff was informed that he was going to be terminated, then was retroactively re-hired, and then employed until a consulting agreement was completed. *See id.* at 558. Ultimately, *Connolly* held that, under the facts there presented, the plaintiff "might reasonably consider that his termination at some time in the future might or might not ever come about," such that there was no adverse employment action at the time he first received notice of his "termination." *Id.* at 559. Similarly, Plaintiff experienced no adverse employment action when an equivalent position might or might not have been available at the time she reintegrated to Naval Intelligence.

it; and (8) because Richardson kept Plaintiff in "limbo" about the status of her reintegration with Naval Intelligence.[8]

In the Fourth Circuit, it is well-established that mere "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017). "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F.Supp.2d 757, 783 (D. Md. 2010). Whether Plaintiff can meet this high bar is not a close question; she cannot. At the outset, Plaintiff cannot claim an objectively intolerable workplace, because she was not working for Naval Intelligence at the time she resigned. Plaintiff was on her JDA with USDI when she resigned and the record reveals no complaints regarding her environment at USDI. Moreover, the majority of the items that Plaintiff lists can be synthesized as one action: Naval Intelligence wanted Plaintiff to return to her home agency for a cyber position that was not yet defined. These facts, while surely frustrating for Plaintiff, are not the sort of "intolerable" working environment to which the constructive discharge theory was meant to apply. *See Jolly v. Northern Telecom, Inc.*, 766 F. Supp. 480, 497 (E.D. Va. 1991) (no constructive discharge where plaintiff "was not content to have his career sit in limbo, so he chose to resign and move elsewhere"). Richardson's comments regarding the CHCO position and Plaintiff's future retirement also do not establish intolerable discrimination. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir.2004) (no constructive discharge where "[plaintiff] alleged that her supervisors yelled at her, told her she was a poor

---

[8] Plaintiff also contends that it is a material disputed fact whether Naval Intelligence had an exemption to a federal hiring freeze that permitted it to post the CHCO position on USAJobs and whether Wright and Richardson blocked Plaintiff from extending her JDA program for another 18-months. This argument fails. Even assuming, as is appropriate in these circumstances, that Plaintiff is correct regarding these disputed facts, they are not material because those facts do not create an objectively intolerable environment.

10

manager ..., chastised her in front of customers, and once required her to work with an injured back"). Moreover, Plaintiff fails to recognize or address the second element of constructive discharge: whether Defendant acted deliberately to force Plaintiff to quit. Accordingly, Plaintiff cannot establish that she was constructively discharged and, therefore, fails to establish the third element of her *prima facie* case for discrimination

Even assuming, *arguendo*, that Plaintiff was constructively discharged, Plaintiff's gender discrimination claim nonetheless fails because she cannot prove the fourth element of her *prima facie* case, namely that she was treated less favorably than similarly situated employees outside the protected class. *See Prettyman v. LTF Club Ops. Co., Inc.*, No. 1:18-cv-122, 2018 WL 5980512, at *4 (E.D. Va. Nov. 13, 2018) (Ellis, J.). Plaintiff identifies three possible comparators: Mark Lokay ("Lokay"), Jack Summe ("Summe"), and William Flynn ("Flynn"). None are in fact comparators. Each individual discussed by Plaintiff returned from a JDA *before* Wright reduced her JDA policy to writing in 2016 and none of them were CHCOs. Accordingly, they are not similarly situated for comparison purposes.

Additionally, Lokay, Summe, and Flynn were not treated differently from Plaintiff; all three men were returned to different positions following their JDA program. Lokay, like Plaintiff, was asked to create an entirely new branch when he returned from his JDA moving from Strategic Engagement and Intelligence and Information Policy to Industrial Base Data Protection. Likewise, Summe moved from Strategic Engagement to Insider Threat and Security, which the Navy was developing and which involved less personnel supervision. Finally, Flynn moved from Director of the Farragut Technical Analysis Center to the Deputy Director for Oceanography. In sum, all three comparators went on JDAs and returned to different positions from the positions they held before they participated in the JDA program. Therefore, these comparators were not treated differently from Plaintiff, who also was asked to return to a different position following her JDA. Because Plaintiff has failed to demonstrate that any similarly situated comparators were treated differently,

11

she cannot establish the fourth element of her *prima facie* case. *See Gardner v. Potter*, No. 1:06-cv-980, 2007 WL 1052549, at *3 (E.D. Va. Apr. 6, 2007).[9] For these reasons, Plaintiff's Title VII gender discrimination claim fails and summary judgment must be granted in favor of Defendant.

## 2.

Plaintiff's age discrimination claim fares no better. A *prima facie* case for age discrimination requires evidence establishing (1) that Plaintiff is a member of a protected class, *i.e.*, at least 40 years of age; (2) that she suffered an adverse employment action; (3) that she was replaced by a substantially younger employee; and (4) that age was the "but-for" cause of defendant's adverse employment action. *See Buchhagen v. ICF Intern., Inc.*, 545 F. App'x 217, 220 (4th Cir. 2013). Again, Plaintiff fails to establish the second element of her *prima facie* case – namely that she suffered an adverse employment action – for the same reasons discussed above. Moreover, Plaintiff failed to produce evidence permitting a reasonable juror to conclude that her age was the but-for cause of any adverse action. The only evidence on animus that Plaintiff produced are: (1) she is a 61-year old who was replaced by a younger individual; and (2) Richardson made comments about retirement during a single conversation. *See EEOC v. Delta Chem. Corp.*, No. 07-2572, 2008 WL 4833098, at *5 (D. Md. Nov. 3, 2005) ("[A] question from an employer about an individual's age and retirement plans is 'a textbook example of an isolated remark which demonstrates nothing.'").[10] It would strain credulity to hold that these facts alone

---

[9] The parties dispute whether Naval Intelligence consistently applied Wright's policy of not permitting JDA participants to return to their prior positions, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but is immaterial because Plaintiff does not provide evidence that the alleged inconsistencies were caused by or resulted in discrimination, *see Mitchell v. USBI Co.*, 186 F.3d 1352, 1355-56 (11th Cir. 1999) ("Standing alone, deviation from a company policy does not demonstrate discriminatory animus.").

[10] In fact, employers need to ask questions about retirement plans in order to manage their workforce and prepare for employee departures. Here, Plaintiff faced only two comments at a single meeting that addressed retirement, one about her own plans and one about the workforce more generally. Plaintiff does not suggest that she heard any comments indicating that Naval Intelligence viewed her age as a problem. Without more, these kinds of comments indicate

12

are sufficient to establish an age discrimination claim. *See Prettyman*, 2018 WL 5980512, at *5; *Delta Chem. Corp.*, 2008 WL 4833098, at *5. Accordingly, Plaintiff's age discrimination claim fails and summary judgment should be granted in favor of Defendant.

## B.

Plaintiff's hostile work environment claim also fails. For Plaintiff's Title VII and ADEA hostile work environment claims to survive summary judgment, she must show that a reasonable jury could find that the alleged conduct by her supervisor and fellow employees: (1) was unwelcome; (2) was based on her gender and/or age; (3) was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) was imputable to her employer. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015); *Baqir v. Principi*, 434 F.3d 733, 745 (4th Cir. 2006). In other words, as the Supreme Court has made clear, a hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quotation marks omitted). As the undisputed factual record reflects, Plaintiff here cannot establish that she faced a work environment where discrimination based on age or gender was either severe or pervasive.

Plaintiff's hostile work environment claims are premised on the same evidence as her constructive discharge claim. Just as Plaintiff cannot establish intolerable working conditions to warrant constructive discharge, so too does she fail to establish severe or pervasive discrimination. To begin with, Plaintiff was on her JDA for the entire period during which she is alleged to have suffered from a severe or pervasive hostile work environment. It is difficult to see how Plaintiff's workplace could be sufficiently "permeated" with discrimination when she was not then working

---

cognizance of the realities of life and workforce management rather than discriminatory animus.

13

with/for the alleged discriminators. Second, as noted with respect to her constructive discharge claim, the vast majority of the facts on which Plaintiff relies to establish a hostile work environment are iterations of the same complaint, namely that Naval Intelligence wanted her to return to her home agency and work in a yet to be designed cyber position. The Fourth Circuit has routinely held that such personnel disputes do not establish a hostile work environment claim. *See Pueschel v. Peters*, 577 F.3d 558, 566 (4th Cir. 2009) (affirming district court decision that isolated personnel decisions were not actionable hostile work environment claims); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (recognizing that there is a "high bar" for hostile work environment claims and that "a routine difference of opinion and personality conflict" are not actionable). Finally, Richardson's four remarks[11] over the course of two meetings constitute the entirety of Plaintiff's argument that these personnel actions stemmed from a discriminatory animus. Such "offhand comments [] and isolated incidents" do not amount to a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Accordingly, summary judgment must be entered on behalf of Defendant on Plaintiff's hostile work environment claims.

C.

Plaintiff's claim of retaliation also fails. To establish a *prima facie* case of retaliation under either Title VII or the ADEA, Plaintiff must prove three elements: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). On summary judgment, Plaintiff must demonstrate that the undisputed record

---

[11] Regarding Plaintiff's age, Richardson asked whether Plaintiff intended to retire and commented on other employees declining to retire. Similarly, Richardson stated Plaintiff should not limit herself to the CHCO position and that other agencies did not have a problem recruiting women because they allow mothers to be close to their children.

14

establishes a triable issue of fact regarding the causal link between the adverse employment action and the protected activity. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). Although Plaintiff's 2017 informal complaint satisfies the first element of her *prima facie* case, here again, Plaintiff cannot demonstrate an adverse employment action. As noted *supra*, Plaintiff resigned from Naval Intelligence before being reassigned to the cyber position and Richardson's single "scathing" email does not rise to the level of an adverse employment action. Moreover, the temporal relationship between the threatened reassignment to the cyber position and Plaintiff's protected activity shows that the decision to place Plaintiff in another position was made *before* Plaintiff complained about discrimination. Accordingly, on the summary judgment record, Plaintiff cannot establish a *prima facie* case of retaliation and summary judgment must be granted in favor of Defendant.

Plaintiff complains of two adverse actions that Richardson took after she made her May 2017 complaints against Wright and Richardson: (1) an email that Richardson sent to Plaintiff; and (2) Richardson's failure to "take remedial steps to ensure [Plaintiff] could return to [Naval Intelligence] at the conclusion of her JDA." Although Plaintiff describes the email as "scathing," the email does not personally criticize Plaintiff. Instead, Richardson's email states that Plaintiff's prior email: (1) required him to "correct the record"; (2) stated facts that are "categorically false"; (3) included an "incorrect characterization"; and (4) was "misleading and incomplete." DEX29. Courts have recognized that "one hardly critical email is insufficient to support a claim for retaliation." *Taylor v. Republic Servs. Inc.*, No. 12-cv-523, 2013 WL 487042, at *9 (E.D. Va. Feb. 6, 2013). Accordingly, Richardson's email is insufficient to constitute an adverse employment action.

The second alleged retaliatory action – namely that Richardson failed to take remedial steps – suffers the same defect as her *prima face* discrimination claims, because Plaintiff resigned before returning to Naval Intelligence. Moreover, Plaintiff cannot establish a causal link between the

decision not to return her to her CHCO position and her protected activity, because that decision was made in December 2016 *before* Plaintiff engaged in the protected activity on May 18, 2017. There can be no causation where, as here, the alleged retaliation occurred before Plaintiff engaged in protected activity. *See Prettyman*, 2018 WL 5980512, at *7. Thus, Plaintiff's retaliation claim fails.

### III.

For the reasons set forth above, Defendant's motion for summary judgment will be granted. An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
June 4, 2019

/s/
T. S. Ellis, III
United States District Judge